12874

HODGES v. LAKE SUMMIT CO.

(152 S. E., 658)

March, 1928.

*Messrs. Bomar & Osborne* and *Blythe & Bonham,* for appellant,

*Messrs. Haynsworth & Haynsworth,* for respondent,

438

March 28, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The appeal in this case was heard at the June term, 1929, and on August 24th the opinion of the Court therein was filed reversing the judgment of the Circuit Court and dismissing the complaint.

Thereafter, for reasons satisfactory to the Court, the opinion filed on August 24th was withdrawn and an opinion, substituted therefor, was filed on September 3d, the judgment of this Court being the same, the reversal of the judgment of the Circuit Court and the dismissal of the complaint.

The plaintiff, respondent, then filed a petition for a rehearing which upon consideration was granted on November, 1929.

At the December term the rehearing of the appeal was had, and this opinion follows; it will supersede the opinion filed September 3d.

This is an action by Oscar Hodges, trustee of Green River Manufacturing Company and E. W. Montgomery Company, against Lake Summit Company, upon a note dated July 1, 1921, due on demand, payable to Green River Manufacturing Company, for $26,970.76, at the office of the Green River Manufacturing Company, signed "Lake Summit Company, J. O. Bell, Treasurer."

The setting of the case may be thus explained:

It appears that about the year 1919, the Blue Ridge Power Company owned, in addition to the property connected with its power enterprise, certain land near Tuxedo, N. C., which it considered available for development into mountain lots. A separate corporation was chartered and organized under the laws of North Carolina, the Lake Summit Company,

for the sole purpose of subdividing this land and disposing of the lots; that was the only business in which it ever engaged.

In the real estate development a system of road building was inaugurated, which included certain adjacent lands of the Green River Manufacturing Company, and about $100,-000 was expended in the work; it being understood and agreed that the companies interested would contribute to the expenses thereof.

J. O. Bell was the treasurer of the Lake Summit Company, and also the executive head of the Green River Manufacturing Company; he was actively engaged in the enterprise of the Lake Summit Company, and had immediate supervision and direction of the road building, in the construction of which he is supposed to have used money of the Green River Manufacturing Company. For this money he executed and delivered to the Green River Manufacturing Company the note which is the subject of this action, on July 1, 1921. This note was executed in North Carolina, payable in North Carolina, and was a North Carolina contract.

After the execution and delivery of the note, Bell, as executive head of the Green River Manufacturing Company, hypothecated it to the E. W. Montgomery Company, a South Carolina corporation engaged in the cotton business at Greenville, S. C. This appears to have taken place in Greenville, as E. W. Montgomery testified, "some time between July 1, and October, 1922," more than a year after its date. The note has ever since been held by the E. W. Montgomery Company, as it claims, as a continuing guaranty or collateral to what might be due to that company by the Green River Manufacturing Company, upon acceptances and other cotton transactions.

In 1922, Bell, as treasurer of Lake Summit Company, was succeeded by H. L. Bomar (an attorney living and doing business as such in the City of Spartanburg), as presi-

dent and treasurer. He appears not to have been satisfied with the authority of Bell to execute the note, and did not authorize its payment.

Thereafter the management of the Green River Manufacturing Company changed hands, and Bomar had considerable correspondence with the new executive head of the company about the note. The payment of the note was thus further delayed. Eventually the note became barred by the Statute of Limitations in North Carolina before any action was taken upon it by either the Green River Manufacturing Company or the E. W. Montgomery Company.

On November 30, 1925, the note concededly being barred by the Statute of Limitations in North Carolina (C. S. N. C. § 441), the Green River Manufacturing Company and the E. W. Montgomery Company jointly executed an assignment of it to Oscar Hodges as trustee, to collect the same and, if necessary, to institute and prosecute suit thereon; and out of the proceeds of collection to pay certain costs of collection, commissions, and attorney's fees, and out of the balance, the claim of E. W. Montgomery Company, and what remained to the Green River Manufacturing Company.

The present action was instituted on February 3, 1926, by the service of the summons and complaint upon H. L. Bomar, president of the Lake Summit Company, at his office in the City of Spartanburg, S. C.

The defendant, by special appearance, appearing solely for the purpose of questioning the jurisdiction of the Court of Common Pleas for Greenville County, served notice upon the plaintiff that it would on the 20th day of February, 1926, move before Hon. T. J. Mauldin, at Pickens, S. C., for an order setting aside the service of summons and complaint, upon the ground that such service was ineffectual, null, and void, for the reason that the defendant was not at the time of such service engaged in doing business in South Carolina, and being a nonresident, the Court could not obtain jurisdiction of it by service upon its president.

The motion to dismiss the process, for want of jurisdiction, was postponed to suit the convenience of counsel, and thereafter deferred from time to time, until some time in November, 1926, when counsel for the plaintiff requested that counsel for the defendant file an answer to the complaint, and plaintiff's counsel agreed that such filing of the answer would not be considered a waiver of the right to insist upon the motion to dismiss for want of jurisdiction, or in any way to interfere with defendant's right to have such motion heard. With this understanding, defendant on the 29th day of November, 1926, filed its answer to the complaint reserving its rights under the motion to dismiss for lack of jurisdiction. The matter thus stood until the case came on for trial, at which time counsel for the defendant urged the hearing of the motion to dismiss for want of jurisdiction, which counsel for plaintiff resisted.

When the case was called for trial (at a time not stated in the record for appeal), before his Honor, Judge Grimball, and a jury, the defendant presented the motion to dismiss for want of jurisdiction. The motion was refused in an order dated March 23, 1928.

In the answer of the defendant the material allegations of the complaint were denied. The defendant specially relied upon the defense of the Statute of Limitations of North Carolina; that the Court was without jurisdiction; and that the defendant did not justly owe the amount of the note, but that upon an accounting between it and the Green River Manufacturing Company, it would be found that a large part of the note, if not all of it, is not a proper obligation of the Lake Summit Company, but was and is the obligation of the Green River Manufacturing Company for whose benefit the work was done.

After much evidence the case was submitted to the jury, which found a verdict in favor of the plaintiff for the full amount sued for. From the judgment entered upon this

verdict the defendant has appealed upon exceptions which fairly present the matters hereinafter discussed.

## THE QUESTION OF JURISDICTION

This question is to be considered in a double aspect: The jurisdiction of the *person* of the defendant, and the jurisdiction of the *subject-matter* of the controversy.

Both maker and payee of the note were corporations of North Carolina; the note was executed and delivered in that state; it was payable there; the maker was engaged in business in that state; it had no corporate business anywhere else; its property which might be subjected to a judgment was there.

It so happened that the payee of the note and its pledgee allowed the time for bringing action under the law of North Carolina to run out. An action in the Courts of North Carolina would have been defeated by the bar of the statute.

We do not think that it can be denied that the main purpose of the assignment to Hodges, trustee, was to present the controversy to a South Carolina Court which as was conceived, rightly or not, would apply the Statute of Limitations of South Carolina rather than that of North Carolina.

At the same time it must be conceded that if the payee and the pledgee of the note were within their legal rights in executing this assignment, their motive in so doing is not a subject of legitimate inquiry, unless it be made to appear that it was but a plan to vest in the South Carolina Courts a jurisdiction which it otherwise did not have of the controversy.

*As to the jurisdiction of the person of the defendant:*

This depended upon the issue of fact whether the defendant, at the time of the service of the summons and complaint upon the president at Spartanburg, was doing business in this State.

His Honor, Judge Grimball, held that there was sufficient evidence of the fact that the defendant was doing business in this State to justify the conclusion that the Court of Common Pleas of Greenville County had jurisdiction of the case. He relied upon the following circumstances:

1. That the president and secretary affixed their signatures and the seal of the company, at the office of the president in the City of Spartanburg, to contracts for the sale of lots located in North Carolina and returned them to the agent of the company at Tuxedo, N. C., for delivery to the purchasers.

2. That deeds to lots were handled by the same officers in the same way.

3. That the company had done some banking business in Spartanburg.

4. That at times meetings of the board of directors, five of whom lived in South Carolina, were held in Spartanburg.

5. That purchase-money notes for lots were discounted by a Spartanburg bank.

6. That the president of the company, from his law office in Spartanburg, corresponded with the executive head of the Green River Manufacturing Company at Tuxedo, N. C., in reference to the note sued upon.

7. That audits of the books of the company were made in Spartanburg under the supervision of the president.

8. That the president of the company issued checks from his office in Spartanburg.

Under the case of *Washington-Virginia R. Co. v. Trust Co.*, 238 U. S., 185, 35 S. Ct., 818, 820, 59 L. Ed., 1262, there appears no question as to the correctness of the ruling of his Honor Judge Grimball. There the Court said:

"It is urged that the keeping of the books in Philadelphia was for the convenience of the president and treasurer, but it also appears that such books were required to be kept by the by-laws of the company. Among the uncontroverted

facts it appears that the defendant company had an office in the City of Philadelphia, where the president of the company lived, upon whom service was made, and that at this office the treasurer of the company, who also lived in Philadelphia, kept its regular books, and from this office was conducted a general correspondence in relation to the business of the company. The company kept four bank accounts in separate banks in the City of Philadelphia, where money was deposited and checked out in payment of mortgages, dividends, and the larger bills of the company. Such business of the company as required his attention at the Philadelphia office was there transacted by the president. Checks for payment of bills of the company at Washington were drawn at Philadelphia and forwarded to Washington.

"We think the mere recital of these facts makes it evident that the corporation was properly served. It had submitted itself to the local jurisdiction, and there enjoyed the protection of the laws. In that jurisdiction by duly authorized agents it was, at the time of service, transacting an essential and material part of its business.

"It follows that the judgment of the District Court, maintaining its jurisdiction, must be affirmed."

*As to the jurisdiction of the subject-matter of the controversy:*

It does not follow as a matter of course that the Court had jurisdiction of the *subject-matter* of the controversy for the reason simply that it had jurisdiction of the *person* of the defendant. In order to accord to the Court jurisdiction of the entire case, it must appear that its jurisdiction of both the person of the defendant *and* the subject-matter cannot be questioned.

In *McGrath v. Ins. Co.,* 74 S. C., 69, 54 S. E., 218, it was held that, although a general appearance or answer to the merits is a waiver of the objection of want of jurisdiction of the person of the defendant: "When,

however, jurisdiction of the subject-matter is concerned, it is not waived by appearance and answer, but may be urged at any time."

Certainly the acquisition of jurisdiction of the person of the defendant by personal service is not more potent than a general appearance or answer to the merits.

It is of interest to inquire whether the Green River Manufacturing Company could have maintained an action in the Court of Common Pleas of Greenville County, upon the note in question, by service upon the president of the company in Spartanburg. The inquiry is definitely answered in Section 774 of Code Civ. Proc.:

"An action against a corporation created by or under the laws of any other State government, or country may be brought in the Circuit Court:

"1. By any resident of this State, for any cause of action.

"2. By a plaintiff not a resident of this State, *when the cause of action shall have arisen,* or the subject of the action shall be situated, *within this State."*

In *Central R. Co. v. Georgia Co.,* 32 S. C., 319, 11 S. E., 192, 201, the Court said: "Section 423 of the Code [now 774] provides that 'an action against a corporation created by or under the laws of any other State, government or country may be brought in the Circuit Court (1) by any resident of this State, for any cause of action; (2) by a plaintiff not a resident of this State when the cause of action shall have arisen, or the subject of the action shall be situated, within this State.' It seems to us very clear that the sole object of this provision was to limit the cases in which a nonresident plaintiff might sue a foreign corporation in the Courts of this State to the two classes mentioned in the second subdivision of the section, viz.: to cases in which the cause of action has arisen in this State, or to cases in which the subject of the action shall be situated within this State. The fact that no express words of exclusion or limitation are used cannot affect the question, for any other view would

render the section wholly nugatory. Why give a nonresident the right to sue a foreign corporation in certain specific cases, if such suit could be brought in any class of cases? And why the marked distinction between the right of a resident and a nonresident to sue a foreign corporation in the Courts of this State, whereby the former is allowed to bring such suit in any case, while the latter can sue in two specific cases? It seems to us too plain for argument that the effect of that section is to declare that a nonresident can sue a foreign corporation only in the two cases specified, and hence, when such an action is brought, it cannot be maintained unless it appears either that the cause of action had arisen in this State, or that the subject of the action is situated within this State."

The cause of action sued upon is a note executed and delivered in the State of North Carolina, in relation to a business transaction had there, and specifically made payable at the office of the payee in North Carolina. It could not be other than a North Carolina contract. The maker of the note was a North Carolina corporation, and what is more to the point, the payee was a corporation of that State. It appears therefore beyond controversy that under the provisions of the Code, the Green River Manufacturing Company could not have maintained an action upon the note in South Carolina. So far as it is concerned, and supposing that it was the only party interested in the note, was the situation improved by the assignment of the note to Oscar Hodges, a citizen of South Carolina, as trustee? In other words, can the holder of a note in which he alone is interested, by assignment, confer upon the Courts of South Carolina jurisdiction of an action by his assignee, which he himself could not have invoked?

It may be conceded that if the Green River Manufacturing Company had in good faith assigned the note to Oscar Hodges, for value, and no longer had an interest in it which had by the assignment passed entirely

to Hodges, the latter might have invoked the jurisdiction of the South Carolina Court in an action upon the note, having perfected personal service upon the president of the company doing business at Spartanburg. *Lipe v. R. Co.,* 123 S. C., 515, 116 S. E., 101, 30 A. L. R., 248, where it was held in an exceedingly interesting opinion by Mr. Justice Marion that a resident of this State, having a transitory cause of action against a foreign corporation doing business in this State, may acquire jurisdiction of it by personal service upon an agent doing business in this State, notwithstanding the fact that the cause of action is based upon a tort committed in another State.

In 5 C. J., 940, it is said: "But under statutes authorizing suit by a *bona fide* assignee, or by the real party in interest, it is a good defence to an action by an assignee against a debtor that the assignment was merely colorable, having been made without consideration, and for the purpose of evading a disability of the assignor to sue, or of enabling him to testify, or to confer jurisdiction on a particular Court."

In *Crawford v. Brooke,* 4 Gill (Md.), 213, it appeared that an account was assigned by the creditor because of it being barred by the Statute of Limitations and for the purpose of making himself a witness to prove the rendition of the services and the promise of the defendant within three years to pay the same. It was held that the assignment could be impeached.

In the case of *Crawford v. Neal,* 144 U. S., 585, 12 S. Ct., 759, 761, 36 L. Ed., 552, the Court said: "If the transfers of the judgments to the complainant were fictitious, the plaintiffs therein continuing to be the real parties in interest, and the complainant but a nominal or colorable party, his name being used only for the purpose of jurisdiction, then the objection to the jurisdiction of the Circuit Court would be well taken; but if the transfers were absolute, and the judgment creditors parted with all their interest for good

consideration; then the mere fact that one of the motives of the purchase may have been to enable the purchaser to bring suit in the United States Court would not be sufficient to defeat the jurisdiction."

In *Douglas v. Walker,* 42 Tex. Civ. App., 213, 92 S. W., 1026, 1927, it was held, quoting syllabus: "A fictitious transfer of a claim to a mere nominal or colorable party, to confer jurisdiction on a Court of a county other than that in which the defendant resides, the original claimants being the real parties in interest, is insufficient for the purpose designed."

In the case of *Darragh v. Bigger,* 183 Pa., 397, 39 A., 37, one of a partnership, in order to remove his disqualification as a witness under a statute similar to our Section 708, assigned his interest in the chose in action the subject of the suit to his copartner. It was held, quoting syllabus: "Even if a mere assignment of his interest will qualify a witness under the statute, one made by a party to a controversy, only for the purpose of enabling him to sustain the suit by his testimony, is not made in that good faith which the statute intends."

The Court in its opinion said: "It is not necessary, however, to decide at present whether any mere assignment of his interest will qualify a witness under the statute, because we regard it as clear that an assignment by a party to a controversy, made only for the purpose of enabling him to sustain the suit by his testimony, is not made in that good faith which the statute intends. In *Post v. Avery,* 5 Watt & S. [Pa.], 509, it was held that an assignment of a cause of action, the motive of which was to qualify the assignor as a witness, would be treated as colorable only, and ineffective for the purpose. Without entering into the labryrinth of contentions and distinctions to which that famous case gave rise, its substantial principle is right, that an act of a party, which increases his legal rights at the expense of another, must affirmatively appear to have been done with other

motive than to evade the law. The general purpose of the Act of 1887 was to open the mouths of all witnesses so far as it could be done with that regard for equality which justice demands. If both parties are living, both may be heard, notwithstanding their interest; if one be dead, equality shall be maintained by excluding the other from the stand. No rule on this subject has ever been successfully formulated in language which will invariably and under all circumstances produce equality, or do complete justice, but the Act of 1887 approximates to that end as nearly as has yet been reached. Hence it makes provision to some extent for exceptional cases, and, among them, the case of an interested witness who divests himself of his interest. But it requires that the parting with the interest shall be done in good faith, and this means that it shall not have been done merely to evade the disqualification of the law."

In *Verstine v. Yeaney,* 210 Pa., 109, 59 A., 689, 690, the Court in its opinion said: "It is true Stamey, on the very day he offered himself as a witness at the hearing of the rule to set aside the decree, undertook, by an assignment of his interest in the agreement, to qualify himself to testify as to what had taken place between him and Yeaney, in support of the contention that the time for the payment of the purchase money had been extended; but the Court correctly said the conclusion was irresistible that the sole purpose of the assignment was to make him a competent witness, and it was, therefore, ineffectual to accomplish that object."

The case of *Hopkins v. Hopkins,* 4 Strob. Eq., 207, 53 Am. Dec., 663, is exceedingly apposite. The facts and the legal conclusions of the Court appear lucidly in the following extract from the opinion: "But I will now discuss the ground upon which I am more particularly instructed by the Court to place its judgment. I have already stated that where there has been an assignment (for valuable consideration, of for the consideration of love from a parent to a child), of legal *choses* that are unassignable at law, this Court will

entertain a bill, in the name of the assignee, for the enforcement of such claims; provided, that the assignor be made a party either as a complainant or defendant; and provided also, there be *bona fides* in the transaction of the assignment. If the object be to obtain an unconscientious advantage over the party to be brought to the reckoning, the Court will not lend itself to the enforcement of the inequitable arrangement. It seems to the Court that the purpose of the parties to this assignment was not in good faith to the defendant. The object was to obtain an undue advantage, by enabling Mrs. Sarah Hopkins to become a witness in establishing her account against the estate of her deceased son. From the relations between the assignor and the assignees, it did not matter much to her whether she or they got the benefit of this claim. If she wished to make a donation of this amount to her sons, why did she not sue for it in her own name, and, after recovery, give it to them? It cannot be doubted that the assignment was a mere contrivance to recover, by means of her own testimony, a claim which she could not otherwise recover. The arrangement was in their understanding to have the effect of opening her mouth as a witness, while the lips of the defendant were to remain hermetically sealed."

We think it is perfectly clear, therefore, that so far as the Green River Manufacturing Company is concerned, the assignment to Hodges of the note, under the circumstances, could not have conferred upon the Courts of South Carolina jurisdiction of the action upon the note.

Considering next the situation of E. W. Montgomery Company in relation to the note, and assuming for the moment that at the time of the commencement of the present action that company had the same interest in the note that it had at the time of the assignment by it and the Green River Power Company to Hodges (a matter that will be later discussed):

At some time between July and October, 1922, the Montgomery Company came into possession of the note in question and held it as collateral security to an indebtedness due at that time to it by the Green River Power Company. At the time of the assignment of the note to Hodges, in November, 1925, that indebtedness was approximately $7,000.00. The Montgomery Company then occupied the position of a pledgee in possession.

The contention of the plaintiff is that on account of this relation which existed at the time of the assignment to Hodges, the Courts of South Carolina were open to the Montgomery Company to sue upon the note in its own name, and that therefore the assignment to Hodges could not have the effect of conferring jurisdiction upon the Courts of South Carolina which already existed in behalf of the Montgomery Company.

It is contended by the plaintiff that the transfer of the note by the Green River Power Company to the Montgomery Company as collateral security to the indebtedness due by the power company to it constituted a transfer of the legal title to the Montgomery Company, and that for that reason the latter had the right to sue in its own name upon the note. We do not think that this contention is sustained by the authorities:

In 21 R. C. L., 649, it is said: "With regard to the respective rights of the parties to a contract of pledge, it is well settled that *the general property in the thing pledged remains in the pledgor,* and only a special property vests in the pledgee. While he has the right to retain the property pledged until the debt for which it was pledged is fully satisfied or has been otherwise discharged, the pledgee acquires no interest in the property except as a security for his debt, and even where the legal title to incorporeal property such as corporate stock is transferred to a pledgee as collateral security, he takes only a special property therein, as such transfer merely performs the same office that the delivery

of possession does in case of a pledge of corporeal property, and the nature of the contract is not changed. The general property in the pledge remains in the pledgor after as well as before default. The default of the pledgor to pay his debt at maturity, in no way affects the nature of the pledgee's rights concerning the property pledged, except that he then becomes entitled to proceed to make the security available in the manner prescribed by law or by the terms of the contract."

In *Gregg v. Bank,* 72 S. C., 458, 52 S. E., 195, 197, 110 Am. St. Rep., 633, the Court said: "The ordinary relation of pledgor and pledgee imports general ownership of the pledge by the pledgor, and *a special property or lien* of the pledgee accompanying the possession."

It was held by this Court in the case of *Montague v. Stelts,* 37 S. C., 200, 15 S. E., 968, 972, 34 Am. St. Rep., 736: "When a creditor receives from his debtor notes or other securities as collaterals, he becomes a bailee of such securities, and, as such, he is bound to use ordinary diligence, such as persons usually exercise in reference to their own matters, in endeavoring to collect such securities, unless there is an express agreement relieving him of such obligation. * * *"

The Court cites in support of this proposition 18 A. & E. Enc. L., 643, which is in the first edition of that work, and is reproduced in the second edition, Volume 22, 899, as follows: "It is well settled that when a chose in action, such as a bond, note, or accepted order on a third person, is transferred and delivered to a creditor as collateral security, it is the duty of the pledgee to use reasonable care and diligence to make such collateral available; that he is bound to use proper exertions to render the collateral effectual for the purpose for which it was pledged; that if necessary he must bring an action against the maker of the collateral; and that if, through his negligence or wrongful act or omission, the collateral is lost he is accountable and liable

to the pledgor in the same manner as a pledgee of goods and merchandise is liable to the pledgor if they are lost or destroyed through the pledgee's failure to give them the necessary protection and care."

From this we think that it must be concluded that the right of the pledgee to sue upon the collateral in his own name depends upon the existence of a necessity to protect the collateral, in the interest of the pledgor. For instance, when the payee of a note accepts as collateral a note not then due, payable to the maker of the secured note, it becomes his duty, for the protection of that maker, to exercise due care in the collection of the note at its maturity, and he may bring suit upon it in his own name, although the secured note may not then be due. If there should be indorsers upon the note, notice of nonpayment upon presentation at maturity should be given. A failure to observe these obligations will render the pledgee liable to the pledgor for the consequent loss. The right of the pledgee in such case, to sue in his own name, depends upon his duty to the maker of the secured note, and not upon his acquisition of the legal title to the note by virtue of the pledge. If therefore such duty did not exist, the right to sue would be without foundation.

On such event the pledgee is not, however, without remedy. He may proceed under Section 5628, Vol. 3, Code of 1922, the hypothecation statute, or he may bring an action in the Court of equity to make available the "special property or lien" referred to in the case of *Gregg v. Bank,* 72 S. C., 458, 52 S. E., 195, 110 Am. St. Rep., 633, in the quotation above set forth.

If the Montgomery Company had seen fit to exercise its right to enter the Court of equity, in its own name, to make its "special property" available, it should first have made a demand upon the power company to enforce payment of the note; this would not have availed it for the reason that the power company's action would have been barred by the

statute of North Carolina, and besides the power company would not have been able to acquire jurisdiction in South Carolina, being a foreign corporation. Besides, the power company might very naturally have taken the position that the Montgomery Company had negligently caused a loss to it by allowing the outlawry of the note.

If the Montgomery Company, as claimed, held the legal title to the note and had the right to sue upon it in the Courts of South Carolina, not subject to the statute of limitations of North Carolina, why the circumambulation of having the note assigned to Hodges and paying him a commission of $500 for doing what it could have done directly? There must have been a reason for it. We think that it may be found in the following consideration:

The power company was a foreign corporation and could not sue in this State upon a contract made in North Carolina, to be performed there, by a corporation of that State to a corporation of the same; it would relieve the Montgomery Company from any possible liability to the power company for its apparent negligence in allowing the outlawry of the note; it was an effort to co-operate with the power company in transferring the jurisdiction to the South Carolina Courts where the limitation enforceable was six years (Code Civ. Proc., 1922, § 331) instead of three, under the North Carolina statute.

The note was dated July 1, 1921, payable on demand; it was transferred to the Montgomery Company in the fall of 1922, more than a year thereafter, and on account of the lapse of time, being payable on demand, it must be considered as past-due paper. Under the North Carolina statute of limitations it was barred in 1924, a year before it was assigned to Hodges in November, 1925. In the meantime the Montgomery Company held it as collateral security and allowed it to be outlawed under the North Carolina statute without having taken any steps to enforce it or have it renewed.

For these reasons we do not think that the Montgomery Company could have maintained an action in equity, and that its assignee, Hodges, can stand in no better position than it, much less could it have maintained an action at law based upon its alleged title to the note.

But waiving this objection, a more serious one confronts the E. W. Montgomery Company:

The undisputed facts show that some time between July and October, 1922, the E. W. Montgomery Company came into possession of the note in question, and held the same as collateral security to the indebtedness of the Green River Manufacturing Company to it. It appears by the agreement that in November, 1925, the amount of the indebtedness of the Green River Manufacturing Company to E. W. Montgomery Company was approximately $7,000; that the Green River Company had made demand of the Montgomery Company to collect the note; that the two companies agreed to assign the note to a trustee to be selected by them, to collect the same; that they did on November 30, 1925, transfer, set over, and assign the note to Oscar Hodges, as trustee to collect the note and to bring suit on the same, if necessary, and to pay over to the parties, out of the proceeds of the suit, their respective interests in the note, and to take his commissions out of such proceeds.

On the 3rd day of February, 1926, Oscar Hodges, trustee, brought suit on the note. The complaint alleges that Green River Manufacturing Company and E. W. Montgomery Company had transferred and delivered the note to the plaintiff in trust to collect the same, and pay the amount due E. W. Montgomery Company (which at the time suit was entered was approximately $7,000), and turn over the balance to the Green River Manufacturing Company.

The case was not tried until the February term of Court, 1928. At that time E. W. Montgomery, president of the E. W. Montgomery Company, was the principal witness for the plaintiff, and it appears by his testimony that at the time

of the trial of the case E. W. Montgomery Company was no longer a party in interest, for the reason that any indebtedness which the Green River Manufacturing Company had owed the E. W. Montgomery Company, at the commencement of the suit, and for which the said E. W. Montgomery Company had an interest in the note as pledgee, *had been paid by the Green River Manufacturing Company.*

The E. W. Montgomery Company has not acquired and could not, after the assignment of the note to Oscar Hodges, as trustee, acquire, any interest in the note as collateral holder, by reason of any indebtedness, incurred by Green River Manufacturing Company to E. W. Montgomery Company, *after* the date of the trustee agreement, or *after* the date of which suit was entered; there was thus returned to the Green River Company such interest as the E. W. Montgomery Company had in the note at the commencement of the suit, by paying all sums it owed E. W. Montgomery Company at that time; at the time of the trial of the case therefore the Green River Manufacturing Company was the only party in interest.

That these are the facts is indisputably shown by E. W. Montgomery's uncontradicted testimony. It is true that he asserts repeatedly that at no time since he first received the note had the Green River Company ever owed him less than $6,000; and that up to and at the time of the suit he had extended credit to Green River Manufacturing Company on the strength of said note as collateral security. It appears, however, by his testimony that he continued to extend credit after he knew that the Lake Summit Company had refused to pay the note, and after he had learned that the statute of limitations had run against the note in North Carolina. It is improbable that a business man would regard such a paper as a valuable security. But matters not what he thought, the question is: What was the effect of his assignment of the note to Oscar Hodges? That assignment was a complete relinquishment of the same as collateral so far as future ad-

vancements were concerned and fixed the extent to which the E. W. Montgomery Company might claim any interest in the note as pledgee.

It was an unqualified assignment, although for a particular purpose. It was based upon a consideration, and it amounted to an agreement on the part of the assignors, by which they fixed definitely their respective interests in the note. The interest of the E. W. Montgomery Company was fixed at approximately $7,000. Since the agreement states that the Green River Manufacturing Company had demanded that the E. W. Montgomery Company proceed to collect the note, the only inference to be drawn from the agreement is that the Green River Company intended thereby to fix the collateral interest of the Montgomery Company.

In 5 Corpus Juris, p. 942, it is said: "'A valid and unqualified assignment of a chose in action, which has a present existence, transfers to the assignee the chose assigned, that is to say, the assignee takes the legal or equitable title for the chose to the same extent to which the assignor had the title. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment."

And at page 943: "In the construction of assignments the main object is to ascertain the intention of the parties, as in the case of any other contract or deed. This intention is to be derived from a consideration of the whole instrument, and is to be sought in the words and language employed; and, if the words are free from ambiguity and express plainly the purpose of the instrument, there is no occasion for interpretation."

And at pages 944 and 945, it is said: "All property and property rights that are comprehended by the terms used therein pass by an assignment, and as hereafter seen, such rights and remedies of the assignor as are incident to the assigned property are vested in the assignee by virtue of the

assignment. But the rights or interests not covered by the scope of the assignment and not incident to the right expressly assigned do not pass to the assignee. An assignment operates to transfer to the assignee all the right, title or interest of the assignor in the thing assigned."

This being the law, upon the assignment November 30, 1925, no matter to what extent the E. W. Montgomery Company thereafter credited the Green River Manufacturing Company, it did not increase the Montgomery Company's collateral interest in the note. And if it appears that at the time the case was tried the Green River Manufacturing Company had paid its debt to the Montgomery Company for which the note was pledged, then the Green River Manufacturing Company was the sole owner of the note, and therefore the only party in interest.

The testimony of Montgomery shows clearly that although the Green River Manufacturing Company *at the time of the trial* owed his company a considerable amount of money, not a dollar of that indebtedness was incurred prior to October, 1927, two years practically after the date of the assignment. All that was due E. W. Montgomery Company at the date of the assignment, *and for which only the note stood sponsor,* had been liquidated when the trial took place in February, 1928.

When, therefore, the Green River Manufacturing Company paid the debt for which the Montgomery Company had held the note as pledgee, it cleared the collateral, and the Green River Manufacturing Company is therefore the only party interested in the note or the outcome of the suit.

Since the Montgomery Company no longer has any interest in the note, it is only a nominal party to the suit, and is entitled to recover nothing for itself. Section 354, Code of Civil Procedure, 1922, provides that every action must be prosecuted in the name of the real party in interest. Since the Green River Manufacturing Company cannot by itself maintain this action, it cannot do so by making a South

Carolina citizen a party plaintiff, who has no interest in the cause of action. A non-resident cannot bring a suit by a South Carolina citizen, as trustee, which suit he could not bring himself.

We think the case of *Matthews & Co. v. Cantey,* 48 S. C., 589, 26 S. E., 894, 896, is as nearly on all fours with this case as possible, and is fully decisive of the issue. In this case Matthews & Co. brought suit to foreclose a note and mortgage, which had been assigned to them as collateral by the holders of the note and mortgage, who were not made parties to the suit. After suit was brought the debt for which the security had been pledged was paid in full. This appearing as a conceded fact, on motion of the defendant, the complaint was dismissed and the plaintiff appealed. In sustaining this ruling the Court said: "It cannot be said that plaintiffs, as trustees, are accountable to the parties entitled to the proceeds of the collateral, and had a right to proceed in their own name to collect the collateral, and pay over proceeds to party entitled, for this would be inconsistent with the conceded fact that they no longer had any interest whatsoever in the notes and mortgage. Under circumstances of this kind we must give effect to the imperative requirement of Section 132 (now 354), which requires that 'every action must be prosecuted in the name of the real party in interest, except as otherwise provided in Section 134,' etc."

Since it is the rule in this State that a suit cannot be maintained in the name of a party plaintiff who is properly a party by reason of his collateral interest in the subject-matter of the suit, where said party has lost such interest after the commencement of the suit, then it would seem necessarily to follow that where such party has lost his interest as pledgee, and there remains only as party plaintiff one who could not of his own right maintain the action, then the suit must fall.

The Green River Manufacturing Company then being the only party in interest, it appears incontrovertible that

under Section 774 of the Code, the Court was without juris-
diction to entertain the action against the Lake Summit
Company.

But entirely apart from Section 774 of the Code and the
decision construing it, which has been quoted from, the case
of *Louisville & N. R. R. v. Chatters*, 279 U. S., 320, 49
S. Ct., 329, 330, 73 L. Ed., 711, is a strong presentation
of the policy of that Court, in interpreting State legislation
purporting to confer jurisdiction upon foreign corporations,
to exclude causes of action which did not arise out of the
business done by the corporations in the State. The decision
alone would sustain the position of the defendant that the
Court of Common Pleas of Greenville County would not
have jurisdiction of an action brought by the Green River
Manufacturing Company against the Lake Summit Com-
pany, upon the cause of action under review.

In that case the plaintiff, a citizen of Louisiana, brought
an action in a Federal District Court of that State, against
the Southern Railway Company, a corporation of Virginia,
and the Louisville & Nashville Railroad Company, a corpo-
ration of Kentucky, for damages on account of a personal
injury sustained by him by the alleged negligence of the
Southern Railway Company. The injury occurred in the
State of Virginia, while he was a passenger upon a through
ticket from New Orleans to Washington. The ticket was
sold to him by the Louisville & Nashville Railroad Company
over its lines and those of the Southern Railway Company,
under a traffic arrangement between the two companies by
which the selling company, in such transactions, acted as
agent of the other company. Process was served upon an
agent of the Southern Railway Company, in Louisiana,
designated by it to receive service of process as required
by a statute of Louisiana. The Southern Railway Company
appeared specifically, excepting to the jurisdiction of the
Court upon the ground that the cause of action which was
transitory arose outside of the State of Louisiana and not

out of any business done by it within that State. Its exception was overruled by the trial Court; a verdict in favor of the plaintiff was returned; judgment was affirmed by the Circuit Court of Appeals; and certiorari granted by the Supreme Court. That Court sustained the ruling of the Circuit Court of Appeals upon the ground that the Southern was present doing business in Louisiana through its agent and that the cause of action grew out of the transaction consummated in Louisiana. The Court, however, very distinctly held: "A foreign corporation is amenable to suit to enforce a personal liability if it is doing business within the jurisdiction in such manner and to such extent as to warrant the inference that it is present there. *Lafayette Insurance Co. v. French*, 18 How., 404, 15 L. Ed., 451; *Connecticut Mutual Life Ins. Co. v. Spratley*, 172 U. S., 602, 43 L. Ed., 569, 19 U. S., 308, *St. Louis Southwestern Ry. v. Alexander*, 227 U. S., 218, 57 L. Ed., 486, 33 S. Ct., 245, Ann. Cas., 1915-B, 77. Even when present and amenable to suit it may not, unless it has consented (*Pennsylvania F. Ins. Co. v. Gold Issue Min. & Mill. Co.*, 243 U. S., 93, 61 L. Ed., 610, 37 S. Ct., 344; *Smolik v. Philadelphia & R. Coal & I. Co.* (D. C.), 222 F., 148), be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction (*Old Wayne Mut. Life Ass'n. v. McDonough*, 204 U. S., 8, 51 L. Ed., 345, 27 S. Ct., 236; *Simon v. Southern Ry. Co.*, 236 U. S., 115, 59 L. Ed., 492, 35 S. Ct., 255)."

It has not been deemed necessary to consider any other ground of appeal, as the objection to the jurisdiction of the Court should have been sustained.

The judgment of this Court is that the judgment of the Circuit Court be reversed and that the complaint be dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE CARTER concurs in result.