**William H. BLACKWELL, as Guardian ad Litem for Stuart Nerzig, an infant, Plaintiff,**

v.

**VANCE TRUCKING COMPANY, Incorporated, Defendant.**

**Civ. A. No. 4857.**

United States District Court
E. D. South Carolina,
Florence Division.

March 5, 1956.

Emil T. Cannon, Florence, S. C., for plaintiff.

H. E. Yarborough, Jr., Florence, S. C., for defendant.

PAUL, District Judge.

In this action, which grows out of a collision between two motor vehicles, the defendant, appearing specially, has filed (1) a motion to set aside the service of the summons and complaint, and (2) a motion to dismiss the action for improper venue.

On casual examination it appears that the first of these motions involves the question as to whether the plaintiff has sued the right person rather than a question as to the validity of service. If this be true then the question of whether the action should be dismissed as to the named defendant could not be determined on motion but only after a full development of the apparently disputed facts as to the ownership and use of the vehicle involved in the accident. The motion to set aside the service of the summons and complaint will therefore be denied.

The motion to dismiss the action for lack of proper venue raises an interesting question arising from the following facts: On July 21, 1953, one Stuart Nerzig, a resident of the State of New York and a minor, was injured in a collision between an automobile in which he was

riding and a truck owned and operated by a resident of North Carolina. The accident took place on a public highway in Dillon County, South Carolina.

The action is instituted by "William H. Blackwell, as Guardian ad Litem for Stuart Nerzig, an infant." William H. Blackwell is an attorney who is a citizen and resident of South Carolina and the complaint alleges that he has been duly appointed by this court as the guardian ad litem to represent Nerzig, an infant. While it is not specifically so alleged, it is clear that diversity of citizenship is the ground upon which plaintiff seeks the jurisdiction of the federal court.

The defendant's attack upon the venue rests on the venue statute and upon the provisions of Rule 17 of the Rules of Civil Procedure, 28 U.S.C. The first of these, 28 U.S.C. § 1391(a) provides that:

"A civil action where jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

The pertinent portions of Rule 17 are as follows:

"(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust * * * or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *.

   *     *     *     *     *     *

"(c) Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative * * * or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. * * *"

The contention of the defendant is that Stuart Nerzig, the injured person, is the real party in interest as plaintiff, and that venue must be laid, either in New York, where the real plaintiff resides, or in North Carolina, where the defendant resides. While conceding that an infant can sue only by a next friend or similar representative, the defendant urges that the venue of the action is to be determined by the residence of the infant, the real party in interest.

The counter contention of the plaintiff may be summed up in the following language from a brief submitted by his counsel: "The plaintiff relies upon the South Carolina citizenship of William H. Blackwell, the Guardian ad Litem for the infant, Stuart Nerzig (N. Y. Citizen) to make proper venue here in the United States District Court for the Eastern District of South Carolina."

The question before the court, therefore, is this: can an infant residing in one state cause a guardian ad litem or next friend to be appointed in another state for the purpose of bringing suit in the second state and thereby create venue in the federal court in such second state based solely on the residence of the guardian ad litem or next friend? I am of opinion that he cannot.

The writer, who is not a resident of South Carolina and is sitting in this court by assignment, must confess that at the outset he faces several questions which are novel in his experience. First of all he is not familiar with any proceeding whereby a guardian ad litem may be appointed before a suit is instituted—which it would seem must be necessary if the guardian ad litem is to bring the action. In the second place the writer's experience and practice has been that guardians ad litem are appointed by the court only after a suit has been brought and for the purpose of protecting the interests of an infant (or other person under disability) who has been made a defendant in the suit. Certainly this appears to be the traditional function of the office. In 1 Bouvier's Law Dict., Rawle's Third Revision, p.

1390 we find the following definition and attending comment:

> "Guardian ad Litem. A guardian appointed to represent the ward in legal proceedings to which he is a party defendant" * * *
>
> The appointment of such is incident to the power of every court to try a case; * * * and the power is then confined to the particular case at bar. * * * His duty is to manage the interest of the infant when sued. * * *. A guardian ad litem cannot be appointed till the infant has been brought before the court in some of the modes prescribed by law."

And in 27 Am.Jur. p. 840, Sect. 120.

> "The legal representative of an infant in making defense to an action was called at the common law his guardian ad litem, and this term is preserved in modern practice."

Further in the same discussion (p. 842) it is said:

> "The court, however, can appoint a guardian ad litem only when the infant is a party defendant."

■ To the same effect are cases cited in an annotation in 9 A.L.R. 1537. In one of these (Tucker v. Dabbs, 59 Tenn. 18) it is said that the distinction between a next friend and a guardian ad litem is that the former is admitted by the court to *prosecute a suit* in the name and behalf of an infant *plaintiff*, whereas the guardian ad litem is *appointed by the* court to *defend a suit* against an infant *defendant*.

However it appears that in some jurisdictions the term is used (synonymously with next friend) to represent the person by whom an infant may institute a suit, and it must be said that the language of Rule 17(c) providing that an infant may sue by a next friend or by a guardian ad litem seems to abolish the traditional distinction between the functions of the two, and to give countenance to the practice of designating the representative of an infant plaintiff as a guardian ad litem. However this seems to resolve into a mere matter of nomenclature, for nothing in the rules changes the essential nature of a guardian ad litem.

■ It is in the failure to take note of these essential functions of a guardian ad litem and of the limitations upon his powers and duties that counsel for the plaintiff has fallen in error. He relies upon the rule that, generally speaking, when a suit is brought by an executor or administrator it is the citizenship of the executor or administrator which is controlling on the question of diverse citizenship, and not that of beneficiaries of the estate, and that the same is ordinarily true of trustees and of receivers. There is no question that this principle is generally accepted. See Dobie on Federal Procedure pp. 193–194 and cases there cited.

■ But this is because executors, administrators and these other named representatives are the real parties in interest. Executors and administrators are invested with the power and duty to take into custody the assets of the estate and to manage and preserve such assets; to institute and defend suits in behalf of the estate and generally to control and handle the property of the estate. Also it is generally true that executors and administrators alone can bring actions for the benefit of the estate. See 21 Am.Jur. pp. 485, 897. Corresponding powers and duties rest in trustees of an express trust and in *general* guardians of those under disability. A general guardian is invested with the power and has the duty of taking charge of and managing the property of an incompetent. 28 C.J. 1058 defines the guardian of an infant as "one who legally has the care and management of the person or the estate, or both, of a child, during his minority." See, also, 39 C.J.S., Guardian and Ward, § 1.

■ But a guardian *ad litem* is something quite different. He is appointed for the mere temporary duty of protecting the legal rights of an infant in a particular suit and his duties and his

office end with that suit. He is not a party in interest in the suit, no property comes into his hands, and he has no powers nor duties either prior to the institution of the suit or after its termination.

The plaintiff relies on the case of Mexican Central Ry. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 213, 47 L.Ed. 245, for support for his position. In that case a guardian brought suit in his own name in Texas in a district of which he was resident but in which neither his ward nor the defendant resided. In that respect the facts duplicate those in the instant case. But a vital difference is that in the Eckman case the plaintiff was a *general* guardian. The court makes this abundantly clear in upholding his right to sue in the district of his own residence. After first stating that it was "admitted that Eckman was duly appointed guardian of both the person and estate of (the infant) Huesselmann", the court proceeds to inquire as to what powers such a guardian possessed under the Texas statute, quoting therefrom the following:

" 'Art. 2623. The guardian of the estate is entitled to the possession and management of all property belonging to the ward; to collect all debts, rents, or claims due such ward; to enforce all obligations in his favor; to bring and defend suits by or against him * * *.' "

The case of Martineau v. City of St. Paul, 8 Cir., 172 F.2d 777, 779, while not identical with, is very similar in principle to the instant case. There the injured infant and the defendants were all residents of Minnesota. The parents of the infant, evidently having the Eckman case, supra, in mind, went into a Minnesota court alleging " 'that a general guardian should be appointed for the purpose of protecting the person and estate of said minor by prosecuting an action for personal injuries sustained by said minor' ". They procured the appointment of a resident of Illinois as "general guardian" and he then brought suit in his own name in the federal court in Minnesota relying on diversity juris-

diction. Motions to dismiss were granted by the District Court, 78 F.Supp. 892, and affirmed by the Court of Appeals. The latter court, after stating that it was plain that the appointment of a citizen of Illinois as guardian was for the purpose of conferring jurisdiction on the federal court, proceeded to examine "the relationship which Martineau (the guardian) and his ward bear to this controversy under Minnesota law." The conclusions of the court were that under the applicable Minnesota law the guardian had no estate or interest in the property of the infant or in the claim being asserted; that the minor was the real party in interest, and that, while the guardian had control of the prosecution of the suit, it should have been brought in the name of the infant; that the plaintiff could not maintain the action in his own name in the state court of Minnesota and therefore could not do so in the federal court. The court then further says:

"The proper title of this action is, 'Daniel Joseph Murphy, a minor, by Robert J. Martineau, his general guardian, Plaintiff, versus' the defendants. As so amended the title discloses what is the fact, namely, that the actual controversy is between citizens of Minnesota, and that the diversity of citizenship requisite for federal jurisdiction is lacking."

The significance of this case is that, although the plaintiff was designated a "general guardian", the court held that under the laws of Minnesota he had no estate or interest in his ward's property and hence was not the real party in interest. A second ground of the decision appears to be, as stressed by the District Court, that the appointment of an Illinois citizen as guardian was solely for the obvious purpose of obtaining a federal jurisdiction which otherwise was absent.

██ No authority has been cited to the court supporting the proposition that a guardian ad litem may sue in his own

name in the face of any statute or rule that actions shall be brought in the name of the real party in interest. The authority is clearly to the contrary. In Dobie on Federal Procedure, p. 194, after mentioning those in various representative capacities who may sue in their own names on the theory that they are the real parties in interest, we find it definitely stated: "But the next friend or guardian ad litem of an infant is a mere mechanical device by which an infant may sue and be sued; the infant is the real litigant and his would be the controlling citizenship". And see the cases there cited which are specifically in point.

Later cases are to the same effect. See Merritt v. Greenberg, D.C.N.Y., 4 F. Supp. 655, where the court notes the difference between a guardian who under the laws of the state may sue in his own name, and a guardian ad litem, saying:

"This suit is not brought by a guardian who in her own right might bring the suit, but is brought by the infant, by a guardian ad litem, who is appointed solely for the purpose, and has no right in her own name to bring the suit, and the infant and not the guardian ad litem is the real party in interest."

Again in Horzepa v. Dauski, D.C.N.Y., 40 F.Supp. 476, 478:

"The infant, and not the guardian ad litem, is the real party in interest. The infant, in this case, is a citizen of the United States of America, and a resident of this district, and the citizenship of the infant determines the question of diversity, and not that of the guardian ad litem." Citing cases.

Numerous other cases and other authority might be cited to show the generally prevailing rule as to the status of next friends and guardians ad litem as plaintiff.

It remains to be seen whether there is anything in the laws of South Carolina governing the question here which supports the position of the plaintiff and differs from the generally prevailing rule. There have been cited to me by counsel for the plaintiff certain sections of the South Carolina Code, following:

"10–207. Party in interest to sue. Every action must be prosecuted in the name of the real party in interest except as otherwise provided in § 10–208 * * *."

"10–208. Actions by Executor, Trustee, etc. An executor or administrator, a trustee of an express trust or a person expressly authorized by statute may sue without joining with him the person for whose benefit the action is prosecuted. * * *"

"10–231. Actions by and against infants and incompetents. When an infant or mentally incompetent person * * * is a party he must appear by guardian ad litem who, * * * may be appointed by the court in which the action is prosecuted * * *."

No comfort for plaintiff can be found in these statutes. Section 10–208 is similar in language to paragraph (a) of Federal Rule 17; and Section 10–231 is the same general effect of paragraph (c) of Rule 17. As regards both the statute and the rule, there is one important distinction to be noted. Executors, administrators and like representatives are permitted to sue in their own names without joining the beneficiaries of the action. But when an infant wants to sue *he* (the infant) *must sue by* his guardian ad litem or next friend. In the first instance the beneficiaries of the suit need not be parties plaintiff; in the second instance the infant himself, the real party in interest, must become the plaintiff—even though it be by guardian ad litem.

It appears further that this question has been settled by court decision in South Carolina. In the case of Pieper v. Shahid, 101 S.C. 364, 85 S.E. 905, it is definitely held that an action by the guardian of an infant for personal injuries to his ward must be brought in

the name of the infant by his guardian. In that case the action was by "W. H. Pieper, as guardian ad litem for Violet A. Pieper versus etc". The complaint was demurred to on the ground that it did not appear from the allegations of the complaint that the named *plaintiff* had suffered any damage. The demurrer was sustained, the court holding that the action should have been in the name of Violet A. Pieper, *by* her guardian ad litem, W. H. Pieper. And see Wilson v. Gibbes Machinery Co., 189 S.C. 426, 1 S.E.2d 490, and Hodges v. Lake Summit Co., 155 S.C. 436, 152 S.E. 658, both dealing with the requirement of the South Carolina statute that actions must be brought by the real party in interest.

In Pieper v. Shahid, supra, a case between South Carolina citizens in a court of that state, the court permitted the summons and complaint to be amended to show that the injured infant, the real party in interest, was plaintiff. But in this case such action would, of course, be fatal to plaintiff's effort to stay in this court. To use the words of the appellate court in Martineau v. City of St. Paul, supra, "No one is under any illusions" as to why this action was brought in the name of a South Carolina citizen as guardian ad litem. It is plain, and I presume would be conceded, that it was in an attempt to establish venue in South Carolina. However it is clear from the authorities that this cannot be done. The proper nature of this action and its proper style is "Stuart Nerzig, an infant, by William H. Blackwell, his guardian ad litem v. Vance Trucking Co. When stated in this form (to paraphrase the language of Martineau v. City of St. Paul) the title itself discloses what is the fact, namely, that the actual controversy is between a citizen of New York and a citizen of North Carolina. The statute confines the venue of the action to either the district where the plaintiff resides or where the defendant resides. Objection to the venue has been timely raised. It must be sustained and the action dismissed.

In a brief submitted by counsel the plaintiff recognizes that if venue in the Eastern District of South Carolina, based on the citizenship of the guardian ad litem, cannot be sustained venue must lie either in New York or in North Carolina. And he asks that, if the court should hold the venue in South Carolina improper, the case be transferred to such district in New York as is the residence of the infant. He urges the provisions of 28 U.S.C. § 1404 as the basis for such action. While this suggestion is made only in the brief, the court will treat it as a motion to that end. As such I think it will have to be denied.

■ The material portion of the section, 1404, referred to provides:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This section does not give a court unlimited discretion as to the transfer of a case to another district. The grounds upon which it may be done are stated in the statute, namely, "for the convenience of parties and witnesses, in the interest of justice." The accident involved in this action occurred in South Carolina where, presumably, any witnesses to the accident are to be found. The defendant resides in North Carolina. It is certainly not "for the convenience" of the parties and witnesses for the defendant and these witnesses to be dragged up to New York simply because the plaintiff desires to try the case in his own district.

[10, 11] But aside from the lack of merit in the application for transfer, there seems little doubt that this court has no power under the circumstances existing here to make such a transfer. Section 1404 finds root in the doctrine of *forum non conveniens*, the doctrine under which a court could decline jurisdiction of a case when it was apparent that a more convenient forum for the trial existed. Section 1404 merely gives

authority to the courts to transfer a case where such conditions appear. But the application of the statute presupposes that the action has been brought in a district where it might properly have been tried. See United States v. E. I. Du Pont de Nemours & Co., D.C. D.C., 83 F.Supp. 233, at page 234, where the court in discussing Section 1404, (then recently enacted) says:

"The new provision assumes that the action has been filed in a jurisdiction where venue may be properly laid, for if it has not been so brought, it is subject to dismissal. The new statute assumes that the action has been instituted in a proper district, and grants the court discretion to change the place of trial to some other district in which the action might have been originally commenced. In other words, the statute assumes that venue exists where suit is filed." See also Cox v. Pennsylvania R. Co., D.C.N.Y., 72 F.Supp. 278, 279.

In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, at page 504, 67 S.Ct. 839, at page 841, 91 L.Ed. 1055, the court says: "Indeed the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction or a mistake of venue." And again, 330 U.S. at pages 506–507, 67 S.Ct. at page 842, "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."

Directly in point is the case of Burns v. Chubb, D.C.Pa., 99 F.Supp. 581: In Ex parte Collett, 337 U.S. 55, 60, 69 S. Ct. 944, 947, 959, 93 L.Ed. 1207, the court points out that "[Sect.] 1404(a) of the Code deals with the right to transfer an action properly brought."

The wise basis of the rule just stated is evident. Otherwise a plaintiff could purposely come into a district of improper venue but where he could obtain service of process on the defendant and, when thereafter faced with objec-

tion to the venue, he could have the case transferred to the forum of his residence, where he could not have sued in the first instance because of inability to get service upon the defendant. For example, in this case, we may suppose, which seems evident, that the plaintiff could not have gotten service in New York on this North Carolina defendant. He would have been compelled to go to North Carolina to sue. But by bringing suit in South Carolina he was able to obtain service of process on the defendant through the Highway Commissioner under the provisions of the Non-resident Motorists Act. To allow him now to transfer the case to New York would permit him to try his case in his home district where he could not have otherwise gotten it tried. This sort of thing if permissible could lead to the same results in many diversity cases.

The motion to transfer will be denied.