## 9559

### WRIGHT v. SEALE.

#### (91 S. E. 291.)

1. DEEDS—ACREAGE CONVEYED—SUFFICIENCY OF EVIDENCE.—In an action to foreclose a purchase-money mortgage on a parcel of land alleged to contain a certain number of acres, evidence *held* insufficient to establish defendant's contention that the parcel did not contain such number of acres when plaintiff conveyed.

2. MORTGAGES—FORECLOSURE—ATTORNEY'S FEE.—In an action to foreclose a purchase-money mortgage, an attorney's fee of 10 per cent. was reasonable.

Before BOWMAN, J., Sumter, Spring term, 1915. Affirmed.

Action for foreclosure by R. L. Wright against Mary Alice Seale in her own right and as executrix of the last will and testament of W. H. Seale. From a decree for plaintiff, defendant appeals.

*Mr. John H. Clifton,* for appellant, cites: *As to bound-aries and location:* 99 S. C. 203; 59 S. C. 133. *Tender:* 88 S. C. 525.

*Messrs. Lee & Moise,* for respondent, cite: *As to loca-tion:* 99 S. C. 200. *Plats:* 40 S. C. 535.

November 29, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action to foreclose a purchase-money mortgage on a parcel of land alleged in the complaint to contain 31.9 acres. Answer that the parcel did not contain so many acres, but only 22.53 acres, and that the mortgage debt ought therefore to be abated by so much at $40 per acre. But in the seventh exception, the defendant contends only for a credit

of $228, that is, for a shortage of 5.7 acres at $40 per acre.   So that the only issue of fact is: Did the tract of land so conveyed by Wright to Seale contain 31.9 acres, or a less number of acres?   As now sketched on the plat hereinafter described the tract confessedly now measures 31.9 acres, but the contention is that the line a, b, on the plat hereinafter described is put too far to the south, and onto other lands of the mortgagor.

The Circuit Court found that Wright conveyed to Seale 31.9 acres, and took back a mortgage thereon, and adjudged foreclosure for the full debt, and attorney's fee; the Court found also that there had been no tender by the defendant of the sum of money due by Seale's estate, and that the plaintiff's attorneys were entitled to the fee claimed.

There are seven exceptions to the decree; but the appellant has argued the first five exceptions together and as one; the sixth exception is general, and the seventh hinges upon a determination of the first five exceptions.   So that there are only two questions: (1) What is the acreage of the mortgaged premises? and (2) was there a tender of the right amount due and are the plaintiff's counsel entitled to 10 per cent. attorney's fees?

The locus is represented by the following plat, which shows the issue:

FOOTNOTE TO PLAT BY THE COURT.—No. 4 is the full length western tract of 87 acres; of which the White sons conveyed the southern part to Jones for 48.81 acres, and the northern part to W. N. White for 38.69 acres, aggregating 87.50 acres. No. 5 is the full length eastern tract of 117½ acres, and was partitioned off to J. K. White. Of tract 5, J. K. White conveyed the northern part of 63 acres to W. N. White, so that W. N. White thus came to own the northern parts of both tracts; and these two (38.69 and 63) he conveyed to R. L. Wright for 105 acres. Of tract 5, J. K. White also conveyed "the remainder" of it, being the southern part, to W. H. Seale, marked B on the sketch, and expressed in the deed to be 57.18 acres. Of the parts of 4 and 5, 105 acres, which Wright got from W. N. White, Wright conveyed to Seale 31.9, marked A on the sketch, being so much of the northern part of No. 5 as lay south of the branch. That is the parcel of land in issue.

This is the Haynesworth plat; it is conceded to be correct, except the dotted line a, b, run across it; that plat is the basis of all the rights in issue; it was made in 1902 to represent the lands of J. K. White, who was the father of J. K. W., W. N., and L. P. White; it was made to effect a partition of the lands betwixt the sons. Parcels Nos. 1, 2, and 3 are irrelevant, and are not set out; the issue here arises out of parcels 4 and 5, copied above. The note at the foot of the plat represents the devolutions of title.

As above stated, the dotted line a, b, was not drawn by Haynesworth; it was made under the following circumstances, as testified to by W. Loring Lee, a civil engineer:

"About 1903, after the White estate had been partitioned and divided among the heirs, there was a disposition on the part of some of them to sell off some of their lands. Mr. John Haynesworth had made a survey of the entire tract, and partitioned it, and they wanted to know approximately the area they would have from the line running east and west across this tract. That line was located across there by Messrs. Willie, Johnson, and Purvis White, and the area north of it was approximated for the purpose of making a sale to Mr. H. L. B. Wells, for Mr. Britton, and I ran the line and laid it down upon the plat by Mr. Haynesworth, and gave the mthe approximate area north of that line. * * * The line marked a, b, line did not terminate at the point 'a;' it went on across the next tract. This line was established by me at the instance of several of the Whites, Johnson, Willie, and Purvis, but no land was sold at all. I went over this land about a year ago and made a survey of the land between this line, which was located, and the branch, which runs, generally speaking, parallel with this line, and north of it. The original line, just marked 'a,' was observed there. There was a hedgerow along that line; it may not have been all the way, but there were indications of it. It was not in the middle of the field, but there were indications of it at the ends of the line. * * *

We made a survey of that tract, running the outside lines and running the line a, b, on these other plats according to its bearing and distances, and also according to my recollection of the line when it was first located. In making our survey of tract A, as shown by Exhibit G, we did not change the location of the line dividing tract A from tract B in any way, but it might have been a few inches out of the way, but not appreciably. * * * I made a complete survey of nothing except tract A.; I only located that line, and gave it proper markings to locate the land lines. In making the survey shown as Exhibit G about one year ago, I did not find that stake, but I found the pine tree corner, and some indications of a hedgerow, but I knew where the line was. I have never surveyed separately the parcels of land known as B and C, but the plat correctly delineates the parcel known as lot A. I won't say that there has been no change. I think Mr. Seale owns both of those tracts, and I think the areas run across the line, but there are indications of where the line had been. Tracts A and B are both owned by Seale at this time, and it is one piece of property, and it is planted as if there were no line there. When I located the a, b, line originally Seale and Wright had nothing to do with it; it was owned by the Whites. * * * The land conveyed by the Whites to John W. Jones lay immediately to the west of tract B, and northern boundary of it was a projection of the same a, b, line on plat C. I never surveyed the land sold by the Whites to John W. Jones, but I made several plats like this for the Messrs. Whites, for the purpose of showing the general shape of the land, but with no certified area put on them. I surveyed the tract of land carefully, and carefully calculated the number of acres, and it contained 31.9 acres, and it is there."

This testimony corroborated by the engineer McLellan makes it plain that the line a, b, was first improvised by Lee on the Haynesworth plat, and that he some years thereafter

laid it down upon the ground starting at a pine tree on the east, and going south of west by the remnants of a hedge-row, across tract 5, and across tract 4 as well.

There is a circumstance which corroborates the witness; the White boys conveyed to Jones the southern part of tract 4 for 48.81, and the northern line was in fact the west-ward projection of the line a, b, though not expressed in the deed to be so; the northern part of tract 4 was afterwards partitioned to W. N. White at 38.69 acres; the aggregate of these two parcels make practically, and almost exactly, the total acreage of No. 4.

Looking now to the expressed aggregate areas of tract 5, in the devolution of titles, they do not exactly equal the total expressed area of tract 5; when partitioned off to J. K. White that total in the partition deed is expressed at 117½ acres; but J. K. White conveyed the northern part of tract 5 to W. N. White for 63 acres, and the southern part of tract 5 to Seale for 57.18 acres, the aggregate of which two parcels is 120.18 acres, as against the total of 117½ acres *supra*, a difference of 2.68 acres.    But it is not at all manifest how this discrepancy comes about.

It is true the son of W. H. Seale testified, as is the fact, that his father purchased that parcel marked B on the sketch in 1904, and that parcel marked A in 1910, and that his father cultivated parcel B, in those years, north of the dotted line; and he also testified that there were no signs of a hedgerow along that line, and that the dotted line put down on the ground runs into the parcel his father first bought from J. K. White.    But the deed from Wright to Seale of parcel A is expressly for 31.9 acres, and Seale held under it until his death two years afterwards.    It is true that Seale did, before his death, question the acreage expressed in the deed.

But there is no ground to conclude that the Circuit Court has erred; the testimony rather preponderates to the Court's

view; and we conclude that the defendant has not established her contention, to wit, that parcel A does not contain 31.9 acres, and did not so contain it when Wright conveyed to Seale; and that the plaintiff is entitled to a judgment for foreclosure and sale. The issue of tender is thus dissipated, for the defendant did not offer to pay the mortgage debt, but only that debt reduced by $288.

The total debt was reported by the master to be $736. The exception to $73.60 for an attorney's fee cannot be sustained; the amount is reasonable, and that in the light of our recent decisions on like questions, from which we do not recede in the least.

The decree below is affirmed.