0927

The FEDERAL LAND BANK OF COLUMBIA and Piedmont Production Credit Association, Respondents v. Eugene M. DAVANT, individually and as Trustee for Newport Industrial Park Partnership, Ann Woodall Davant and W. T. Sherer, York County Tax collector, Defendants, of whom Eugene M. Davant, individually, and Ann Woodall Davant are Appellants.

(355 S. E. (2d) 293)

Court of Appeals

*W. Clarkson McDow, Jr.,* Rock Hill, *for appellants.*

*Melvin B. McKeown,* of *Spratt, McKeown & McCrae,* York, *for respondents.*

Heard Feb. 24, 1987.

Decided April 6, 1987.

Cureton, Judge:

The principal issue in this appeal is whether a South Carolina court should enter a deficiency judgment against two North Carolina residents in a mortgage foreclosure action. In this action, three of four promissory notes the mortgage secures were executed in North Carolina. None of the parties to the notes are residents of South Carolina or have their principal place of business here. The circuit court entered a deficiency judgment for the mortgagee. The mortgagors appeal. We affirm.

On March 5, 1974 Eugene and Ann Woodall Davant (Davants) executed a promissory note to Piedmont Production Credit Association in the amount of $40,950.00 which was subsequently secured by a mortgage of March 20, 1974 covering lands located in York County, South Carolina. The mortgage contained the following future advances clause:

All existing indebtedness of Borrower to Lender (including but not limited to the above described advances), evidenced by promissory notes, and all renewals and extensions thereof, (2) all future advances that may subsequently be made to Borrower by Lender, to be evidenced by promissory notes, and all renewals and extensions thereof, and (3) all other indebtedness of Borrower to Lender, now due or to become due or hereafter contracted, the maximum principal amount of all existing indebtedness, ... outstanding at any one time not to exceed ... $500,000.00, plus interest thereon, attorney fees and court costs....

After March 20, 1974 for monies received, the Davants executed and delivered three additional notes to Piedmont in North Carolina and secured the notes with deeds of trust (hereinafter referred to as mortgages) covering three parcels of real estate located in North Carolina. All notes went into default and Piedmont commenced mortgage foreclosure actions in both North and South Carolina. Thereafter, the North Carolina mortgage foreclosures were completed and all North Carolina collateral exhausted. However, there remained a debt owing from the Davants to Piedmont on the notes.

Piedmont's foreclosure action in South Carolina was brought to collect the total indebtedness owed by the Davants which included the balances due on both the North Carolina and South Carolina notes. In response to Piedmont's foreclosure petition, the Davants assert that the circuit court did not have subject matter jurisdiction to enter a deficiency judgment against them on that portion of the indebtedness incurred in North Carolina and in any event the court should not exercise jurisdiction because South Carolina is an inconvenient forum.

The action was referred to a special referee who rejected both the Davant's jurisdictional and forum arguments and recommended to the circuit court that Piedmont's mortgage be foreclosed, a deficiency judgment be entered, attorney fees of $10,000.00 be awarded, and the Davant's request for appraisal of one of the North Carolina properties be denied. On appeal to the circuit court, the report of the special referee was confirmed.

The issues on appeal are whether: (1) the circuit court had subject matter jurisdiction to render a deficiency judgment on that portion of the indebtedness incurred in North Carolina; (2) the circuit court abused its discretion by failing to invoke the doctrine of *forum non conveniens;* (3) the Davants were entitled to an appraisal of a tract of land located in North Carolina; and (4) costs and fees incurred by Piedmont in defending itself in a bankruptcy proceeding brought by the Davants should be deducted from the total attorney fee award.

## I.

In objecting to subject matter jurisdiction of the circuit court, the Davants stipulate the circuit court has personal jurisdiction over them. They also concede that the South Carolina court has subject matter jurisdiction over the mortgage foreclosure proceeding and the promissory note executed in South Carolina. Their only objection is that as to the indebtedness represented by the three notes executed in North Carolina, the circuit court has no jurisdiction and therefore may not enter a deficiency judgment respecting that portion of the total indebtedness. The practical difficulty with this contention is that there is no segregation of the total indebtedness into that attributed to the notes executed in North Carolina from that portion of the indebtedness ascribed to the note executed in this state. Thus, there is no way to determine how much of the total indebtedness emanates from the notes executed in North Carolina.

The Davants rely primarily on *Hodges v. Lake Summit Company*, 155 S. C. 436, 152 S. E. 658 (1930) to support their lack of jurisdiction argument. We have no difficulty distinguishing *Hodges.* In *Hodges,* suit was brought in South Carolina on a promissory note where both the payor and payee were North Carolina corporations. After the North Carolina statute of limitations expired, the note was assigned to a South Carolina resident for the purpose of commencing suit. Finding the assignment ineffectual because it was but a plan to vest the South Carolina courts with jurisdiction it otherwise did not have, the Supreme Court nevertheless found that the defendant corporation was subject to the personal jurisdiction of the South Carolina courts

because it was doing business in this state. The Court, however, reversed the circuit court on the question of subject matter jurisdiction. Applying what is now Section 15-5-150, Code of Laws of South Carolina, 1976, more commonly known as our "Door Closing Statute,"[1] the Court said that South Carolina has opened its courts to suits against foreign corporations only if brought by South Carolina residents, or by nonresidents for causes of actions arising within the state or where the subject of the action is situated within this state. Concluding that the suit was not brought by a South Carolina resident, and did not arise in South Carolina or concern property situated here, the Court dismissed it for lack of subject matter jurisdiction.

The *Hodges* case differs from the instant case in that the promissory note there involved was not secured by a mortgage on real estate located in this state. Additionally, that case involved an application of our Door Closing Statute. The Davants acknowledge that the *Hodges* case was decided by application of the Door Closing Statute, but argue that there is no logical reason why this state would have greater jurisdiction over nonresident individuals than over foreign corporations. They argue that such an application would deny them equal protection of the law. The short answer to such a contention is that the Statute restricts access to our courts to nonresident plaintiffs against foreign corporations. Since the Davants are not nonresident plaintiffs, they have no standing to complain of the application of the Statute. *Warth v. Seldin*, 422 U. S. 490, 95 S. Ct. 2197, 45 L. Ed. (2d) 343 (1975).

The Davants do not question the validity of the future advances clause to secure the indebtedness represented by the notes executed in North Carolina. Nor do they object to the jurisdiction of the trial court to establish the amount of the indebtedness that the York County mortgage secures as required by Section 29-3-630, Code of Laws of South Carolina, 1976. Their objection seems to be that once that debt is

---

[1] Although applied as a jurisdictional statute, some commentators view door closing statutes as statutory codifications of the common law doctrine of *forum non conveniens. See, Annual Survey of South Carolina Law — Practice and Procedure*, 31 S. C. L. Rev. 87, 92 (1979).

determined, the trial court had no authority to enter a judgment for the sum not satisfied by the foreclosure sale. We hold this contention untenable.

Section 29-3-650, Code of Làws of South Carolina, 1976 authorizes the court to render judgment against the parties liable for payment of the debts secured by a mortgage and "direct at the same time the sale of the mortgaged premises." Section 29-3-660 specifically authorizes the entry of a deficiency judgment when the mortgage debt remains unsatisfied after sale of the mortgaged premises. Having contracted with Piedmont that the York County mortgage secured all future indebtedness, and having acknowledged the authority of the trial court to render a deficiency judgment as to a part of the indebtedness, the Davants will not now be heard to complain that the trial court does not have jurisdiction to render a deficiency judgment as to the remainder of the indebtedness. *See, Perpetual Building and Loan Association of Anderson v. Braun*, 270 S. C. 338, 242 S. E. (2d) 407 (1978). ("[A] judgment for deficiency is merely incidental to the relief sought in a foreclosure action ..."); *Greenwood Loan & Guarantee Association v. Williams*, 71 S. C. 421, 51 S. E. 272 (1905) (where property foreclosed is located in this state, our courts have subject matter jurisdiction even though the mortgagor is a nonresident); *Holly Hill Lumber Co. v. McCoy*, 203 S. C. 59, 26 S. E. (2d) 175, 148 A. L. R. 285 (1943) (A court of equity having once assumed jurisdiction of the cause will retain it to dispose of all issues pled).

The Davants' argument that the instant action is transitory in nature runs counter to their argument that the action is local to the North Carolina courts. Nevertheless, we fail to see how this argument benefits them in that a court has jurisdiction over a transitory action if it has in personam jurisdiction over the defendant, irrespective of whether the cause of action arose within the forum state. 20 Am. Jur. (2d) *Courts* Section 121 (1965).

The Davants cite 20 Am. Jur. (2d) *Courts* Section 127 (1965) for the proposition that an action on a promissory note is transitory "even where the note is secured by a mortgage." As support for this proposition, Am. Jur. mentions the case of *Hogevall v. Hogevall*, 117 Mont. 528, 162 P.

(2d) 218 (1945). In actuality, *Hogevall* supports the opposite view. There, the Montana court in a contest to its jurisdiction held that one executing a note and mortgage in California but securing it with Montana real estate could not object to being sued for the balance due on the note and foreclosure of the mortgage in Montana, although the note was payable and default occurred in California, and both the maker and payee resided there.

## II.

The Davants next contend that even if the trial court had jurisdiction of the subject matter, it should have declined jurisdiction to determine a deficiency judgment as to that portion of the total indebtedness attributable to the notes executed in North Carolina. We disagree.

The doctrine of *forum non conveniens* is a well established doctrine which allows a court with proper jurisdiction to dismiss an action when the convenience of the parties and the ends of justice would be better served if the action were tried elsewhere. *Braten Apparel Corp. v. Bankers Trust Company*, 273 S. C. 663, 259 S. E. (2d) 110 (1979); *Del Rio v. Ballenger Corp.*, 391 F. Supp. 1002 (D. S. C. 1975). The decision to invoke the doctrine of *forum non conveniens* is within the discretion of the trial court. *Braten, supra.* The doctrine is generally invoked whenever the forum has little or no relationship to a cause of action. *Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504 (1977). A court should not dismiss an action under the doctrine unless the balance of factors strongly favors the defendant. *Id.*

It is axiomatic that an action to foreclose a mortgage must be brought where the mortgaged property is situated. *See,* Section 15-7-10(3), Code of Laws of South Carolina, 1976 and cases cited thereunder. Piedmont has chosen to commence this action in the only jurisdiction in which it has security for its debt. The Davants have advanced no compelling reason for requiring Piedmont to pursue separate actions in North Carolina on the North Carolina notes balances and we see no reason to require Piedmont to bring multiple actions to obtain a total judgment on the sums the Davants owe it. Rather than promoting the ends of justice, it appears to us that it would

frustrate justice to deny Piedmont the right to obtain a deficiency judgment ancillary to its mortgage foreclosure action. While the Davants state that an action in North Carolina on the North Carolina indebtedness may lead to a different result than if pursued in this state, we have not been made aware of any defenses that the Davants may assert in North Carolina that cannot be asserted in South Carolina. Moreover, it appears to us anomalous that the Davants would argue their right to litigate in North Carolina the deficiency pertaining to the North Carolina notes, yet insist on their right to apply the South Carolina appraisal statutes to that same indebtedness.

We note that much of the Davants' arguments regarding the better ability of the North Carolina courts to accommodate the litigation are without basis in fact. For example, they argue that our court system is crowded and over-burdened without furnishing any comparison to the North Carolina court system. They also argue that the citizens of this state should not be required to absorb the costs of litigation between citizens of North Carolina. They do not show how the foreclosure action became more expensive merely because the North Carolina notes were included in the indebtedness. Moreover, all of these arguments are now moot because, in any event, the action has now been tried in South Carolina.

### III.

The Davants next assert error on the part of the special referee and circuit court in denying their request to have a tract of land located in North Carolina, which had previously been sold in a foreclosure proceeding in North Carolina, appraised pursuant to our appraisal statutes. We agree with the circuit court that the holding in the case of *Fidelity-Bankers Trust Co. v. Little*, 178 S. C. 133, 181 S. E. 913 (1935) is dispositive of this contention. That case held South Carolina's appraisal statutes inapplicable to the sale of land in other states. *Id.*

### IV.

The Davants' concluding argument is that the attorney fees awarded Piedmont should be reduced by the sum of $3,281.00. That sum was paid by Piedmont to its attorneys to

protect its position in the bankruptcy proceeding brought in North Carolina and added by Piedmont to the total indebtedness owed by the Davants. The Davants do not question Piedmont's right to receive reasonable attorney fees. Their exceptions concerning attorney fees awarded for the time expended by Piedmont's attorneys in the bankruptcy proceeding have been abandoned. Their sole argument is that the $3,281.00 expended by Piedmont in the bankruptcy proceeding for fees and costs should be credited against the attorney fee award of $10,000.00.

The mortgage from the Davants to Piedmont contains a provision by which the Davants agreed to pay "all costs of collection including a reasonable attorney's fee of not less than ten per centum of the total amount due hereon." The Davants do not object to Piedmont's right to pay the bankruptcy costs and fees and add them to the mortgage indebtedness. Their argument seems to be that by not deducting the fees and costs previously paid by Piedmont to their attorneys, Piedmont in fact received an award of $13,281.00 instead of $10,000.00. Even if this were so, it would not constitute reversible error.

At the time of the reference, Piedmont's attorneys ██ had expended some 176 hours in the foreclosure and bankruptcy proceedings. The total indebtedness the court found the Davants owed Piedmont was $214,943.55. The Davants contracted to pay a fee representing ten percent of the total debt found due. Clearly, an attorney fee of $13,281.00 is a great deal less than the Davants agreed to pay. While the trial court may in an equity action determine the reasonableness of attorney fees regardless of percentages agreed to by the parties, *Bank of Enoree v. Yarborough*, 120 S. C. 385, 113 S. E. 313 (1922), the Davants have not shown that the amount of the fee was unreasonable. *See, Superior Auto Ins. Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973); *Read Phosphate Co. v. Jenkins*, 120 S. C. 337, 113 S. E. 317 (1922); *Wright v. Seale*, 106 S. E. 261, 91 S. E. 291 (1916) (fees of ten percent of debt upheld). The Davants had the burden of showing error in the trial judge's discretionary ruling on attorney fees. This they have failed to do.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.