1803

HYLOAD, INC., Appellant-Respondent v. PRE-ENGINEERED
PRODUCTS, INC., a/k/a Pre-Eng, Inc., Respondent-Appellant.
(417 S.E. (2d) 622)

Court of Appeals

*John R. Devlin, Jr.*, of *Love, Thornton, Arnold & Thomason*, Greenville, *for appellant-respondent.*

*Randall S. Hiller*, Greenville, *for respondent-appellant.*

Heard Dec. 11, 1991.

Decided April 6, 1992.

*Per Curiam:*

Hyload, Inc., a manufacturer of roofing material, brought this action for payment on an open account against pre-Engineered Products, Inc., a distributor of Hyload products. Pre-Engineered counterclaimed on the basis of an exclusive distributorship agreement with Hyload. The counterclaim alleged two causes of action: (1) breach of contract; and (2) breach of contract accompanied by a fraudulent act. The circuit court directed a verdict for Hyload for $29,395.41, the balance on unpaid invoices for materials furnished to Pre-Engineered, and awarded Hyload $7,000.00 in attorney's fees. The court submitted the counterclaim to the jury on both causes of action. The jury returned a verdict of $55,000 actual damages for breach of contract. The court denied Hyload's motions for judgment notwithstanding the verdict, a new trial, and a new trial *nisi remittitur*. Hyload appeals the denial of these motions. Pre-Engineered cross appeals the directed verdict for Hyload and the award of attorney's fees. We affirm.

On November 10, 1986, Hyload and Pre-Engineered executed a distributorship agreement making Pre-Engineered the exclusive distributor for Hyload's products in the Southeast. However, Hyload retained the right to sell roofing materials to others under private label.[1] The agreement required Pre-Engineered to pay all invoices within 60 days of receipt. It also required any dispute to be arbitrated in accordance with the rules of the American Arbitration Association.

On September 17, 1987, the parties executed a security agreement under which Hyload agreed to extend credit to Pre-Engineered in return for a security interest in goods sold, Pre-Engineered's accounts receivable, and other collateral. The security agreement obligated Pre-Engineered to pay attorney's fees and costs of collection, including fees and costs Hyload incurred to collect any deficiency remaining unpaid after realization of the collateral.

In early 1987, Pre-Engineered learned about the Bost Bakery job, a construction project in its distributorship area. The specifications called for Hyload 150E roofing material. Pre-Engineered gave quotes to two roofing companies who later bid on the project. The contract was awarded to one of the companies. However, the contract to supply the roofing material went to Total Roofing Design rather than to Pre-Engineered. Pre-Engineered later discovered that Hyload sold Total Roofing Design the material for the Bost Bakery job under a private label agreement.

After losing the Bost Bakery job to Total Roofing Design, Pre-Engineered refused to pay Hyload's invoices and sued Hyload for breach of its exclusive distributorship agreement. In turn, Hyload cancelled the distributorship agreement for nonpayment of the invoices.

In response to Pre-Engineered's suit, Hyload demanded arbitration pursuant to the distributorship agreement. Pre-Engineered agreed to arbitrate and voluntarily dismissed the court action. Pre-Engineered then prepared and sent the arbitration documents to Hyload for its signature. Hyload never signed the documents. Instead, it commenced a claim and delivery action under the security agreement, recovering

---

[1] In a private label sale, Hyload manufactures the roofing materials and sells them to a purchaser, but does not label them with the Hyload brand name. Instead, the purchaser places its own label or brand name on the goods.

$59,014.50 worth of materials and $3,595.72 in accounts receivable. It then instituted this action to recover the remaining balance of $29,395.41 plus attorney's fees. Pre-Engineered answered and reinstituted its original action for breach of the distributorship agreement as a counterclaim.

## I.

Hyload argues the trial judge erred in refusing to dismiss Pre-Engineered's counterclaim because the distributorship agreement required all disputes to be resolved through arbitration. At trial, Pre-Engineered asserted Hyload waived its contractual right to arbitrate by refusing to sign the documents necessary to institute the arbitration process, instead suing for payments due on account under the distributorship agreement. The judge ruled, *inter alia*, that on these facts, Hyload could not compel arbitration.

A party may waive the right to arbitrate given by a contract. *Lawton v. Cain*, 172 So. (2d) 734 (La. App. 1965). There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case. *Id.* Ordinarily, however, bringing a suit based on the contract instead of relying on the arbitration provision constitutes a waiver of the right to arbitrate. *Id.* This is simply a particular instance of the general rule that acts inconsistent with the continued assertion of a right may constitute waiver. *See, Freeman v. McBee*, 280 S.C. 490, 313 S.E. (2d) 325 (Ct. App. 1984); *Bonnette v. State*, 277 S.C. 17, 282 S.E. (2d) 597 (1981). We hold that Hyload waived its right to compel arbitration under the contract by refusing to execute the papers necessary to commence arbitration and electing instead to sue on the contract. The judge was correct in determining that, on the facts of this case, Hyload could not invoke the arbitration clause.

## II.

Hyload argues next that the trial judge erred in not clearly instructing the jury that damages must flow from the breach of contract. We have read the trial judge's entire jury charge, paying particular attention to the instruction on causation. The charge, taken as a whole, correctly states the law in language the jury could understand. We sustain the charge.

## III.

Hyload also argues the trial judge erred in refusing to grant its motion for a new trial *nisi remittitur*. Hyload contends the evidence at trial supported a verdict of $12,000 at most.

The granting of a new trial on the ground of an excessive verdict is within the discretion of the trial judge whose decision will not be disturbed on appeal unless the verdict is wholly unsupported by the evidence. *McPeters v. Yeargin Construction Company*, 290 S.C. 327, 350 S.E. (2d) 208 (Ct. App. 1986).

In this case, the jury returned a verdict of $55,000. The evidence showed Pre-Engineered lost profits of approximately $12,000 on the Bost Bakery job. The president of Pre-Engineered testified his company spent over $200,000 in salaries and expenses to promote Hyload materials. Hyload placed into evidence invoices to show it had paid some of these expenses. The question on appeal is whether the amount of the verdict falls within the range of damages testified to at trial. As the damages awarded were within the range of the evidence, we cannot hold the verdict was excessive as a matter of law. *See, McPeters v. Yeargin Construction Company, supra.* We affirm the judge's ruling.

## IV.

On cross appeal, Pre-Engineered asserts the judge erred in granting Hyload a directed verdict for the $29,395.41 balance for materials furnished. Pre-Engineered admitted it had received the roofing material. It did not dispute the amount of the unpaid invoices. Nevertheless, it argued there was a jury question concerning the enforceability of the security agreement.[2]

A directed verdict motion must be granted when the evidence and all reasonable inferences, viewed in the light most favorable to the nonmoving party, creates no issue of fact. *See, Stanley Smith & Sons v. Limestone*

---

[2] In fact, Pre-Engineered's counsel stated, "I'm not really arguing against you [sic] directing a verdict, for the plaintiff for $29,395.41. . . . If the jury were to determine that is, in fact, the case [security agreement was fraudulently induced] they'd still be entitled to $29,395.41, less whatever set off he might get, but they would not be entitled to proceed for attorney's fees and costs."

*College,* 283 S.C. 430, 322 S.E. (2d) 474 (Ct. App. 1984).

The evidence showed Hyload had delivered the roofing material to Pre-Engineered under the distributorship agreement. The obligation to pay for the material arose under the distributorship agreement. The debt was not created by the security agreement nor was its validity dependent on the existence or enforceability of the security agreement. This was not an action to enforce rights in collateral, but an action for a money judgment against the debtor. Since there was no genuine issue of fact as to the existence of the debt and its amount, the trial judge properly rejected Pre-Engineered's argument and granted the directed verdict.

## V.

Finally, Pre-Engineered argues the trial judge erred in awarding Hyload attorney's fees. The security agreement obligated Pre-Engineered to pay Hyload reasonable attorney's fees and costs for collecting any deficiency remaining after the collateral was applied to the debt. Pre-Engineered argues on appeal that the security agreement is invalid because it was fraudulently induced. However, it neither pleaded nor proved fraud in the inducement at trial. The judge did not submit any issue of fraud in the inducement to the jury. Moreover, the jury rejected the claim for fraud accompanying the breach, instead returning a verdict for simple breach of contract. Pre-Engineered has not appealed the verdict. Accordingly, no issue of fraud or the validity of the security agreement is presented for review. *See, Holmes v. Westvaco Corporation,* 289 S.C. 591, 347 S.E. (2d) 887 (Ct. App. 1986) (appellate court will not review an issue not pleaded nor proved at trial).

Pre-Engineered also contends the amount of attorney's fees awarded was excessive. The amount of attorney's fees rests within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *See, Federal Land Bank of Columbia v. DaVant,* 292 S.C. 172, 355 S.E. (2d) 293 (Ct. App. 1987). The record supports the attorney's fees awarded in this case. *See, Lynn v. Lynn,* 290 S.C. 359, 350 S.E. (2d) 403 (Ct. App. 1986).

Affirmed.