Norman E. BROWNYARD and Helena
Brownyard, Plaintiffs,

v.

MARYLAND CASUALTY COMPANY,
and Valiant Insurance Company,
Defendants.

Civ. A. No. 2:92–3028–22.

United States District Court,
D. South Carolina,
Charleston Division.

May 12, 1994.

Morris D. Rosen, George Trenholm Walker, Charleston, SC, for plaintiffs.

Edward D. Buckley, Jr., Bradish Johnson Waring, Charleston, SC, for defendants.

## ORDER

CURRIE, District Judge.

This action arises from a dispute over insurance proceeds owed to Plaintiffs for damage to their residence as a result of Hurricane Hugo. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Defendant Valiant Insurance Company (hereinafter "Valiant") issued a policy insuring Plaintiffs' home. Defendant Maryland Casualty Company (hereinafter "Maryland") handled adjustment of claims for policies issued by Valiant. Plaintiff's Amended Complaint asserts three causes of action, asks for a finding that a prior arbitration agreement is void and unenforceable, and seeks damages for alleged breach of an insurance policy and bad faith refusal to pay insurance proceeds. The matter is presently before the court on Defendants' Second Motion for Summary Judgment and/or Motion to Compel Arbitration. The court has carefully reviewed the entire record in this matter, including all affidavits and depositions filed in support of and in opposition to the motion, and heard oral argument on April 21, 1994. For the reasons cited below, the court denies Defendants' Second Motion for Summary Judgment and/or Motion to Compel Arbitration.

## FACTS

Plaintiffs' home in Mount Pleasant was insured by Valiant at the time of Hurricane Hugo. Plaintiffs claim they sustained losses of $322,306. In May 1990, Defendants paid $6,374 to Plaintiffs in partial payment of the claim. A dispute continued, however, as to the cause and extent of damage. In May 1990, Gene Silver, Maryland's adjuster, assumed handling of the claim. Because of numerous conflicts and repeated difficulty in obtaining responses from Mr. Silver, Plaintiffs grew increasingly frustrated by the protracted time it was taking to settle the claim (Pltfs.Exh. 11, Affidavit N. Brownyard, at 2). In February 1991, Maryland suggested the parties enter into arbitration proceedings (Id. at Exh. A). Although Plaintiffs were reluctant to pursue this procedure, and preferred to utilize an appraisal method provided for under their policy, they agreed to arbitration upon being assured by Defendants' counsel that arbitration would be an expeditious method that could probably dispose of the dispute within 60 to 90 days (Pltfs.Exh. 11, Affidavit N. Brownyard, at 3). The parties executed an arbitration agreement on September 30, 1991, in which both parties agreed to engage in arbitration pursuant to the South Carolina Uniform Arbitration Act, S.C.Code Ann. §§ 15–48–10 et seq., (Law.Co-op.1976 & Supp.1993).

The parties selected a panel of three arbitrators: one for each party and one unbiased. In April 1992, Defendants suggested a stay of arbitration so that the parties could attempt to settle the matter. On April 23, 1992, attorneys for both parties met with Will Evans, the unbiased arbitrator, in an effort to explore settlement and review the status of arbitration (Pltfs.Exh. 14, Waring Depo., at 7–9). Mr. Evans expressed his desire, as arbitrator, to retain an independent contractor as a consultant if the settlement discussions should fail (Id., at 12–13). Both parties agreed that before progressing with arbitration, and retaining the consultant, they should explore settlement (Pltfs.Exh. 11, Aff. N. Brownyard, at 4–5; Pltfs.Exh. 14, Waring Depo. at 12–13). Immediately after this meeting Plaintiffs made a settlement proposal to Defendants (Pltfs.Exh. 14, Waring Depo., at 12–13). Defendants' attorney told Plaintiffs' attorney that he would consult with his clients to see whether the proposal was acceptable (Id., at 13, 26, 31). The arbitrator had been told that the proceeding was "on hold" to allow

settlement discussions (Pltfs.Exh. 13, Evans Depo., at 9–10, 12, 27–28).

Over the next two months, Plaintiffs' attorney repeatedly attempted to discover Defendants' response to the settlement offer, but Defendants failed to respond (Pltfs.Exh. 15, Aff. W.G. Pearce, attached letter dated June 16, 1992). Finally, on June 16, 1992, Plaintiffs' attorney wrote Defendants' attorney, saying that unless they received a meaningful response from Defendant, they would contact arbitrator Evans and ask him to proceed immediately (Pltfs.Exh. 11, Aff. N. Brownyard, Exh. F). Defendants' counsel responded, in part, "I am sorry for the apparent lack of interest on my client's behalf, but Gene [the adjuster] has not been in the office and then apparently went on vacation. Obviously, you must do what is in the best interest of your client ..." (Id., at Exh. G). On June 29, 1992, Plaintiffs' attorney wrote to Defendants' attorney again requesting a response to the settlement proposal (Pltfs.Exh. 14, Waring Depo., Exh. 6). Although Defendants' attorney had spoken with the adjuster at that time, and although Defendants knew that arbitration was halted pending their response, they failed to communicate a response to the proposal (Id., at 43, 45–46, 52).

Eventually, on July 9, 1992, at Plaintiffs' initiative, arbitrator Evans wrote attorneys for both sides advising that he was ready to proceed and asking for written authorization to secure the services of the consultant, as discussed at the April 23, 1992 meeting (Pltfs.Exh. 11, Aff. N. Brownyard, at 5, and attached Exh. H). The arbitrator asked both parties to share the expenses of the consultant. Shortly thereafter, Plaintiffs' attorney wrote Evans enclosing Plaintiffs' written authorization (Id., at attached Exh. I). Defendants failed to respond at all to Evans' request, and at the time Plaintiffs filed suit in this action, September 11, 1992, ten days before the statute of limitations was to run on Plaintiffs' claim, Defendants still had not responded to the arbitrator's request.

Plaintiffs' Amended Complaint alleges, in part, that Defendants, after obtaining Plaintiffs' consent to arbitration upon representations that it could be effected speedily, have been purposefully unresponsive and have delayed payment of Plaintiffs' claim. They further allege that Defendants have refused to cooperate in the arbitration proceedings and have engaged in a "pattern of conscious foot-dragging," such that Defendants can be said to have waived any right they had to arbitrate the present claim. Plaintiffs allege that the adjuster's chronic unavailability, and Defendants' silence in response to their settlement offer and the arbitrator's request for written authorization, prove Defendants' design to stall the arbitration. Defendants' Answer denies the material allegations of the complaint and asserts that Plaintiffs are bound to arbitrate this dispute pursuant to the arbitration agreement.

Plaintiffs instituted this suit in state court against Maryland on September 16, 1992. On October 23, 1992, Maryland removed this case and filed a Motion to Dismiss based on Plaintiffs' alleged failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P. The court (Hawkins, C.J.) denied the motion on February 2, 1993, finding that "the pleadings at least stated a claim that Defendant waived its right to arbitrate in the present case." On April 21, 1993, Maryland filed its first Summary Judgment Motion and Motion to Compel Arbitration, which argued essentially the same grounds raised in the Motion to Dismiss. On June 26, 1993, the court (Hawkins, C.J.) denied this motion, finding that "further discovery would be required to establish whether actual prejudice exists in this case," and granting Maryland leave to refile the summary judgment motion upon completion of discovery. Defendant Valiant was added to this suit by Amended Complaint filed March 4, 1994. It joins in this second Summary Judgment Motion and/or Motion to Compel Arbitration.

Defendants' Second Summary Judgment Motion and/or Motion to Compel Arbitration raises essentially the same grounds as before. Defendants assert that because the parties were already in arbitration at the time of the alleged delay, Defendants cannot be held to have waived their right to arbitrate. Defendants contend that any complaints regarding prejudice Plaintiffs suf-

fered from the alleged multiple delays should have been addressed to the arbitrator, and that Plaintiffs could have sought an order of the arbitrator compelling Defendants to pay a portion of the consultant fees. Thus, Defendants argue this court must compel the parties to arbitration.

Plaintiffs respond that Defendants, by their dilatory conduct and evasiveness in arbitration proceedings, have waived their right to arbitrate. Plaintiffs argue that the issue is broader than just the one incident involving the failure of Defendants to respond to the arbitrator's letter. Plaintiffs point to the three month period before the arbitrator's July 9, 1992, letter, during which Plaintiffs awaited a response to their settlement offer. Plaintiffs allege that Defendants' recalcitrant refusal to participate or further the arbitration or settlement in a reasonable, timely, and meaningful way, has prevented repairs from being carried out to the property. Moreover, because Defendants refused to renew Plaintiffs' insurance policy in 1992, Plaintiffs have had to seek insurance with another carrier at significantly higher cost and have been totally unable to secure any contents coverage because of the current, unrepaired condition of their home. (Pltfs.Exh. 11, Aff. N. Brownyard, at 7). Thus, Plaintiffs contend they have suffered, and continue to suffer, acute prejudice from Defendants' conduct.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration.*

9 U.S.C. § 3. The test under this section is two-fold: first; the court must determine if the issue is one referable to arbitration; and second, if so, the court must determine if the party applying for the stay is in default in proceeding to arbitration. *C. Itoh & Co. v. Jordan Int'l Co.*, 552 F.2d 1228 (7th Cir. 1977). A default can be characterized as a situation in which a party takes other action inconsistent with the right to arbitrate. *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722 (8th Cir.1976). The question whether a party takes action inconsistent with a right to arbitrate that rises to the level of a default is a question for the court to resolve. *In re: Mercury Constr. Corp.*, 656 F.2d 933 (4th Cir.1981), *aff'd*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The general rule is that acts inconsistent with the continued assertion of a right may constitute waiver. *Hyload, Inc. v. Pre–Engineered Prods., Inc.*, 308 S.C. 277, 417 S.E.2d 622 (Ct.App.1992). There is no set rule as to what constitutes a waiver or abandonment of an arbitration agreement; the question depends on the facts of each case. *Reid Burton Const., Inc. v. Carpenters Dist. Council*, 614 F.2d 698 (10th Cir.1980), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1981). A contractual provision for arbitration may be waived, expressly or impliedly. *See Martin Marietta Alum. Inc. v. General Electric Co.*, 586 F.2d 143 (9th Cir.1978). Whether a waiver has occurred cannot be determined by an inflexible rule and depends on all of the circumstances of the particular case. *Lee v. Insurance Co. of North America*, 562 F.Supp. 562 (D.S.C. 1982).

In applying the foregoing principles to the instant case, the court is constrained to conclude that Defendants' failure to communicate any response to arbitrator Evans' July 9, 1992, letter, knowing that Evans would not proceed until Defendants had executed written authorization to share consultant fees, stalled the progress of the arbitration and evinced an attitude totally consistent with abandonment of the forum. Moreover, in considering the totality of the circumstances in this case, the court notes that the neglect in responding to Evans' letter was

typical of several incidents in which Defendants' lack of cooperation impeded the resolution of this dispute. For example, while the arbitration forum was Defendants' idea and it was Defendants initial responsibility to submit a written arbitration agreement to Plaintiffs, upon Defendants' failure to prepare an agreement in timely fashion, Plaintiffs were compelled to assume this responsibility (Pltfs.Exh. 11, Aff. N. Brownyard, at 3–4). Even though Defendants agreed the parties should temporarily hold the arbitration in abeyance pending settlement negotiations in the two months following April 23, 1992, Defendants ignored Plaintiffs' counsel's repeated telephone calls and letters concerning the Plaintiffs' settlement offer, and failed to tender any counter-proposal. Such behavior manifested an attitude of total noncompliance with good faith resolution of the case. When Plaintiffs, who had acceded to arbitration based on Defendants' assurance that it would be a speedy forum, grew understandably frustrated by this stonewalling and appealed to arbitrator Evans for relief in resuming the arbitration proceedings, Defendants' dilatory conduct continued. It is to no avail that Defendants finally responded to the arbitrator's request on October 14, 1992, over three months after Evans had written Defendants, and over one month after Plaintiffs commenced the lawsuit. It is reasonable to conclude that the communication, tardy as it was, was undoubtedly a response to Plaintiffs' action in filing the suit. Plaintiff should not have had to appeal to arbitrator Evans to kindle Defendants' interest in the arbitration proceedings, nor should Plaintiff had had to file the instant suit to draw Defendants' attention to the arbitration forum. As counsel for Defendants conceded at one point, "Gene Silver, with whom I was dealing, was not as available as he should have been in the matter." (Pltfs.Exh. 11, Aff. N. Brownyard, attached Exh. J).

While most of the reported case law addressing waiver of an arbitration provision arises from situations in which one party engages in a litigation forum to such extent that the court concludes the arbitration forum has been waived, *see, e.g., Maxum Foundations, Inc., v. Salus Corp.,* 779 F.2d 974 (4th Cir.1985), it is clear that conduct apparently manifesting an abandonment of a previously entered into arbitration forum can constitute a "default in proceeding with such arbitration" within the meaning of 9 U.S.C. § 3. *See WorldSource Coil Coating, Inc. v. McGraw Constr. Co., Inc.,* 946 F.2d 473 (6th Cir.1991) ("[i]f a party's action so demonstrates abandonment, it may not retain the right to compel arbitration by simply stating an intent. It is not what you say you are doing, it is what you actually do that controls."). It is well settled that the failure of arbitration through the fault of the insurer abrogates the provision for arbitration, and that the insured, if free from fault in the matter, is absolved from compliance with such provision, and may bring suit on the policy without an arbitration award. *Couch on Insurance 2d* § 50.211. The fault of the insurer may be evidenced by his abandoning the arbitration proceedings. *Id.* at § 50.212. Here Defendants' silence in response to both Plaintiffs' and Evans' requests could scarcely be construed as anything less than an abandonment of the arbitration forum.

Notwithstanding the strong federal policy in favor of arbitration, courts may look to equitable considerations of waiver and estoppel in determining whether to order arbitration. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 545 F.Supp. 765 (N.D.Ill.1982), *aff'd,* 712 F.2d 270 (7th Cir.1983). A mere delay in proceeding to arbitration will not be considered waiver, and the party objecting to arbitration must show prejudice. *Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974 (4th Cir.1985). In determining whether a party's actions have prejudiced an opponent and require a waiver of the right to arbitrate, the court must evaluate considerations of an equitable nature; the test is one of reasonableness, and the court must consider the situation of the parties, the nature of the transaction, and the facts of the particular case. *Siam Feather & Forest Products Co. v. Midwest Feather Co.,* 503 F.Supp. 239 (S.D.Ohio 1980), *aff'd,* 663 F.2d 1073 (6th Cir.1981).

On the instant record, the court finds significant prejudice to Plaintiffs from the unreasonable delays caused by Defendants' conduct. Plaintiffs, having endured

**128**

nearly five years with an unrepaired home, are now unable to obtain the same level of insurance coverage as could be purchased were the home in a repaired state. Defendants' arguments that arbitration could now be concluded in fairly prompt time fail because they ignore the fact that Plaintiffs have had to first exhaust a futile arbitration foray, and then file a lawsuit to achieve Defendants' attention. To return Defendants to an arbitration forum at this time would give Defendants an undue advantage they would not have had in arbitration because Defendants have now had comprehensive discovery of Plaintiffs' position. *See National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772 (D.C.Cir.1987) ("Extensive discovery already afforded Defendants put them in a radically different posture from what they would have been in had they proceeded to arbitration at outset).

The court is not convinced by Defendants' argument that Plaintiffs could have appealed to the arbitrator to exercise his authority and allocate expenses, *see* S.C.Code Ann. § 15–48–10 (Law Co-op.1976). In essence, that is the avenue Plaintiffs selected by their appeal to Evans to resume arbitration. However, in the face of Defendants' silence, the arbitrator would not proceed. Thus, Defendants' behavior totally thwarted the purpose and design of the arbitration forum.

Defendants' eleventh hour attempts to require the arbitration in this case are ineffective, as a matter of law, to alter the effect of Defendants' prior waiver or abandonment. *See, e.g., Bielski v. Wolverine Ins. Co.*, 379 Mich. 280, 150 N.W.2d 788 (1967) ("If defendant's conduct had already worked a waiver of its rights to arbitration, its subsequent demand could not revive them.").

Based on the foregoing reasons and the cited authorities, the court concludes that the Defendants have waived their right to pursue an arbitration forum. Accordingly,

IT IS THEREFORE ORDERED that Defendants' Second Motion for Summary Judgment and/or Motion to Compel Arbitration be denied.